STATE OF NORTH CAROLINA ON RELATIONSHIP OF THE EMPLOYMENT SECURITY COMMISSION OF NORTH CAROLINA v. SKYLAND CRAFTS, INC., 402 SOUTH KING STREET, HENDERSONVILLE, N. C., EMPLOYER No. 31-45-002.

(Filed 13 October, 1954.)

**1. Master and Servant § 57—**

In order for an employer operating less than 20 weeks within a calendar year to be liable for unemployment compensation contributions under the provisions of G.S. 96-8 (f) (2), it is required that such new business not only buy the physical assets of a covered employer, but also that the new business succeed in some real sense to the organization, trade or business, or some part thereof, of the covered employer, ordinarily as a going concern, so that there be some continuity in the business or some part thereof of the former employing unit.

**2. Same—Determination of whether new concern purchases substantially all assets of employer covered by the Employment Security Act.**

Findings to the effect that a new corporation, almost 3 months after an employer covered by the Employment Security Act had ceased to do business, purchased the physical assets of the old corporation which the old corporation then had on hand, without evidence or findings as to the extent of assets of the old corporation on the date it ceased to do business or the date the new corporation purchased its specific personal property, and without findings that the new corporation purchased the accounts receivable, customer lists, good will, or trade name of the old corporation, would seem insufficient to support the conclusion that the new corporation acquired substantially all of the assets of the old within the meaning of G.S. 96-8 (f) (2), since the term "assets" ordinarily embraces all property, real and personal, tangible and intangible.

**3. Same—Findings held insufficient to support conclusion that operations of new corporation were continuation of business of old corporation.**

Findings that a new corporation purchased the tangible assets of an employer covered by the Employment Security Act almost 3 months after such employer ceased to do business, and that the new corporation then took over the premises where the old had operated and paid the rent due under the lease for the remainder of the term, without evidence or findings that the incorporators or persons interested in the new corporation were then or had ever been connected with or interested in the old, or that it employed persons who had worked for the old corporation in any manner other than on an individual basis, or that the new corporation purchased the accounts receivable, customer lists, good will, or trade name of the old corporation, are *held* insufficient to support judgment that the new corporation was a successor to the old so as to be liable for contributions under the Employment Security Act notwithstanding it was in business less than 20 weeks during the calendar year.

**4. Master and Servant § 62—**

An appeal lies from the Employment Security Commission to the Superior Court only after the Employment Security Commission has been given opportunity to pass upon exceptions filed to its original findings of fact and decision. G.S. 96-4 (m).

APPEAL by Skyland Crafts, Inc., from *Moore, J.,* May-June Term, 1954, of HENDERSON.

Proceeding under North Carolina Employment Security Law. G.S. Ch. 96.

The question for decision: Was Crafts, Inc., an "employer," and as such required to make contributions to the Unemployment Compensation Fund on wages paid its employees, during the calendar year 1952?

After due notice, there was a hearing of testimony by a deputy commissioner. The testimony then taken and transcribed was referred to the Commission. After due notice, the Commission (Chairman) heard the matter upon the transcript of evidence, made findings of fact and entered an opinion and order.

The findings of fact, of crucial significance, are set forth in full below:

"Findings of Fact:

"1. Skyland Crafts, Inc., of 402 S. King Street, Hendersonville, North Carolina, hereinafter called Crafts, Inc., is a corporation with its principal place of business located at Hendersonville, North Carolina, and is engaged in the business of manufacturing ladies' handbags from nylon materials, and on occasions has manufactured rugs. Such corporation was organized during the year 1952.

"2. Skyland Handbag Company, hereinafter referred to as the Handbag Company, was a corporation operating a place of business in Hendersonville, North Carolina, manufacturing ladies' handbags from nylon

materials, and on or about October 10, 1952 was a covered employer under the provisions of the Employment Security Law of North Carolina.

"3. That on July 15, 1952 the Handbag Company ceased operations and discontinued the manufacturing of its products. The Handbag Company had a lease on a building in Hendersonville, North Carolina, for the remainder of the year 1952, and continued to pay rent on said building until on or about October 10, 1952, at which time it transferred its lease to Crafts, Inc., and thereafter the rents were assumed and paid by Crafts, Inc. That simultaneously therewith Crafts, Inc. purchased from the Handbag Company all machines and looms then in the building acquired with the lease for a purchase price of $1,500, and in addition thereto they purchased the supply of raw nylon on hand for $8,500. The machines, looms, and nylon constituted all equipment then owned by the Handbag Company, and in addition Crafts, Inc. hired approximately forty individuals who were former employees of the Handbag Company. The Handbag Company formerly employed about eighty-two people; whereas, Crafts, Inc. used only forty-eight people in its operations, (and in addition acquired from the owners of the Handbag Company a list of accounts that the Handbag Company had previously sold bags to.)"

The Commission (Chairman) reached these conclusions of law:

1. The Handbag Company was a covered employer when it ceased operations on 15 July, 1952; and, under the Employment Security Law, G.S. 96-11 (a), continued as such during 1952.

2. Crafts, Inc., on or about 10 October, 1952, "acquired substantially all the assets of the Handbag Company in North Carolina; namely, the lease on building in which the plant was operated, its machines and tools; and raw materials then on hand"; and "became a successor to a covered employer and became an employer under the provisions of Section 96-8 (f) (2) . . . upon the acquisition of the assets, as set forth in the findings of fact above."

The Full Commission, upon consideration of exceptions filed by Crafts, Inc., struck out the last clause of finding of fact #3, enclosed within parenthesis above; and upon the remaining findings of fact adopted the original order as its final decision. G.S. 96-4 (m). Upon appeal, the court below affirmed the Commission's order and signed judgment in accordance therewith. Crafts, Inc., excepted to and appealed from such judgment.

*W. D. Holoman, R. B. Overton, and D. G. Ball* for plaintiff, appellee.
*L. B. Prince* for defendant, appellant.

BOBBITT, J. An "employer" (G.S. 96-8 (f)) is required to make "contributions" in prescribed amounts (G.S. 96-9 (b)) to the Unemploy-

ment Compensation Fund (G.S. 96-6) on "wages" (G.S. 96-8 (n)) for "employment" (G.S. 96-8 (g)) for each calendar year in which the employer is subject to the statute. G.S. 96-9 (a).

Basically, the term "employer" means "any employing unit which in each of twenty different weeks within either the current or the preceding calendar year . . . has, or had in employment, eight or more individuals . . ." G.S. 96-8 (f) (1). Crafts, Inc., was not an "employer" during the calendar year 1952 within this definition. The pivotal point here is whether, notwithstanding it engaged in business for less than twenty weeks in the calendar year 1952, it became an "employer" by reason of the provisions of G.S. 96-8 (f) (2), which, in pertinent part, gives the following definition of "employer":

"Any employing unit which acquired the organization, trade or business or substantially all the assets thereof, of another which at the time of such acquisition was an employer subject to this chapter, or which acquired a part of the organization, trade, or business of another, which at the time of such acquisition was an employer subject to this chapter; provided, such other would have been an employer under paragraph (1) of this subsection, if such part had constituted its entire organization, trade, or business . . ."

Crafts, Inc., was incorporated in 1952. There is neither evidence nor finding of fact that any of its incorporators, or persons interested in the corporation, were then or had ever been connected with or interested in the Handbag Company. It was a new enterprise. On 10 October, 1952, it purchased from the Handbag Company physical assets, to wit, "all machines and looms *then* in the building" and "the supply of raw nylon on hand." (Italics added.) It was found as a fact that these "machines, looms, and nylon constituted all equipment *then* owned by the Handbag Company." (Italics added.)

Nearly three months earlier, to wit, on 15 July, 1952, the Handbag Company, which, during its operations at Hendersonville had some eighty-two employees, shut down. There is no finding of fact as to the extent of its physical assets on 15 July, 1952, or as to dispositions, if any, made between 15 July, 1952, and 10 October, 1952.

The transaction was one where Crafts, Inc., on 10 October, 1952, purchased *specific* personal property from the Handbag Company. Had Crafts, Inc., rented a different building and purchased similar machinery and raw materials from others, it would have no liability for contributions on wages during the closing weeks of 1952.

Crafts, Inc., when it began its operations, employed some forty individuals who had been former employees of the Handbag Company. They were not then employees of the Handbag Company but were employed elsewhere or unemployed. There is neither evidence nor finding of fact

that these persons were employed otherwise than on an individual basis. There is no suggestion that they were so employed pursuant to any sort of understanding or arrangement between the Handbag Company and Crafts, Inc. They were not "acquired" from the Handbag Company.

On 10 October, 1952, Crafts, Inc., took possession of the premises where the Handbag Company had operated. It paid the rent due under the lease for the remainder of its term, to wit, from 10 October, 1952, through 31 December, 1952. The undisputed evidence is that after 1 January, 1953, Crafts, Inc., continued in possession under a month to month rental contract.

The conclusion of law of the Commission is that on or about 10 October, 1952, Crafts, Inc., "acquired substantially all the assets of the Handbag Company in North Carolina; namely, the lease on building in which the plant was operated, its machines and tools, and raw materials then on hand." (The word "tools" does not appear in the findings of fact.) It would seem that this conclusion is not supported by the findings of fact. There is no evidence or finding of fact as to what assets the Handbag Company had on 15 July, 1952, or on 10 October, 1952. The term "assets" ordinarily comprehends all property, real and personal, tangible and intangible. But we need not undertake to define now the precise meaning of the phrase, "or substantially all the assets thereof," for in our view the insufficiency of the findings of fact does not turn on that point.

Read in context, G.S. 96-8 (f) (2) contemplates a transaction in which the purchaser, instead of buying physical assets as such, succeeds in some real sense to the organization, trade or business, or some part thereof, of a covered employer, ordinarily as a going concern. The underlying idea is that of continuity, the new employing unit succeeding to and continuing the business or some part thereof of the former employing unit. Under the facts found we do not think the requisite continuity existed between the Handbag Company and Crafts, Inc.

Crafts, Inc., was composed of new persons, engaged in a new business, under a new name. It did not purchase from the Handbag Company accounts receivable, customer lists, good will, right to use trade name, or any assets except the equipment and raw materials in the Hendersonville location on 10 October, 1952. There was no continuity of organization, trade or business. In fact, on 10 October, 1952, the Handbag Company had gone out of business. Crafts, Inc., did not purport in any sense to be a continuation of or successor to the Handbag Company. The circumstance that Crafts, Inc., was engaged in the same type of business formerly conducted by the Handbag Company is not determinative.

The decision in *Employment Security Com. v. Whitehurst*, 231 N.C. 497, 57 S.E. 2d 770, cited by appellee, has no application here. The

question there was whether two employing units should be treated as a single unit within G.S. 96-8 (f) (3) in determining whether the business had eight employees in each of twenty different weeks during the calendar year. There the second employing unit "acquired the organization, trade or business, or substantially all the assets thereof," of the first employing unit. A dry cleaning business, operated under the name of Colonial Cleaners, was leased by Perry to Whitehurst, a former employee. Whitehurst acquired the entire business, including all assets, as a going concern, and operated without interruption under the name of Colonial Cleaners at the same location. Hence, rather than support appellee's position, the cited case illustrates the requisite element of continuity.

True, as the Commission pointed out, if the Handbag Company had resumed operations in 1952, it would have been required to report and make contributions on wages paid incident to such further operations. G.S. 96-11 (a). But this did not occur. Our question relates solely to the liability, if any, of Crafts, Inc., an independent enterprise, during the closing weeks of 1952.

Our conclusion is that the findings of fact, considered in relation to G.S. 96-8 (f) (2), are insufficient to support the judgment. Therefore, the judgment of the court below will be reversed.

In the view we have taken, questions debated in the briefs as to procedural matters, such as the timely taking of exceptions, etc., become immaterial to decision. However, it may be of value to the profession to call attention to the statutory provisions as to procedure. Observance of procedural requirements is indispensable to the orderly administration of justice.

The Commission is vested with authority "to hold and conduct hearings for the purpose of determining the rights, status and liabilities of any 'employing unit' or 'employer' as said terms are defined by G.S. 96-8 (e) and G.S. 96-8 (f) and subsections thereunder of this chapter." The procedure for hearings before the Commission and incident to appeal to the Superior Court is set forth in detail. G.S. 96-4 (m). But, in order to get a complete view of the procedure in this case, we must go back to G.S. 96-4 (a), which, in part, provides: "The chairman of said Commission shall, except as otherwise provided by the Commission, be vested with all authority of the Commission, including the authority to conduct hearings and make decisions and determinations, when the Commission is not in session and shall execute all orders, rules and regulations established by said Commission."

The steps in the procedure are these:

1. Order for and notice of hearing at which testimony is taken.

2. Notice of hearing by Commission (or Chairman), upon transcript of evidence (when Commission may require additional evidence), after

which the Commission (or Chairman) shall make findings of fact and its determinations predicated thereon.

3. Exceptions to the decision of Commission (or Chairman), stating the grounds of objection thereto, must be filed with the Commission within ten days after notice of such decision.

4. Commission (or Chairman), at a second hearing, passes upon the exceptions so filed; and if any exception is overruled then an appeal may be taken, within ten days after such decision, to the Superior Court, this appeal being from the order overruling the exceptions.

Emphasis upon two features may be helpful: First, where the exception to the original decision of the Commission (or Chairman) is broadside, i.e., consists merely of an objection to and appeal from the decision, the only position reserved relates to the sufficiency of the findings of fact to support the judgment. Second, while the original determination in actual practice is usually, if not always, made by the Chairman, and the decision upon consideration of exceptions thereto in actual practice is usually, if not always, made by the Full Commission, both determinations are deemed the determinations of the Commission. Thus, in a strict sense, the procedure does not contemplate an appeal from the Chairman to the Full Commission; rather, the Commission, prior to appeal to the Superior Court, must be given an opportunity to pass upon exceptions filed to *its* original findings of fact and decision. It is from the latter determination that the appeal to the Superior Court is taken.

Reversed.