NEW CAPITOL BAR & GRILL CORP., PETITIONER-APPELLANT, v. DIVISION OF EMPLOYMENT SECURITY, DEPARTMENT OF LABOR AND INDUSTRY, STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.

Argued September 23, 1957—Decided October 21, 1957.

*Mr. Richard T. McDonough* argued the cause for petitioner-appellant.

*Mr. Herman D. Ringle* argued the cause for defendant-respondent.

The opinion of the court was delivered by

WEINTRAUB, C. J. On June 29, 1950 Joseph McDonough contracted to buy the tavern business of Club 850, Inc. He formed a corporation, New Capitol Bar & Grill Corp., and assigned the contract to it. The sale was consummated on July 11, 1950, at which time New Capitol took over, hiring one employee of the seller a few hours thereafter on the same day and continuing the business without interruption.

It is conceded that at the time of sale, Club 850, Inc. was an employer subject to the Unemployment Compensation Law, *R. S.* 43:21–1 *et seq.* Upon the basis of its own operations, New Capitol would not be a subject employer during the period here involved. The question is whether it nonetheless became one because its vendor was. On July 6, 1951 the Division determined that New Capitol had thus become a subject employer. In 1955 New Capitol paid $1,380.73 in contributions, penalties and interest for the years 1950 through 1953. On January 20, 1956 it applied for a refund under *N. J. S. A.* 43:21–14(*f*), which the Commissioner refused. New Capitol appealed to the Appellate Division, and we certified the appeal on our own motion before consideration of it by the Appellate Division.

*N. J. S. A.* 43:21–19(*h*)(2) provides that "Employer" means "Any employing unit which acquired the organization, trade or business, or substantially all the assets thereof, of

another which at the time of such acquisition was an employer subject to this chapter." New Capitol agrees that it would come within this definition if it had been an "employing unit" at the moment of acquisition, but urges it was not because it first engaged an employee a few hours thereafter and hence was not an employing unit "at the time of such acquisition." It stresses the definition of "employing unit" in the section cited above:

"(g) 'Employing unit' means any * * * corporation * * * which has or subsequent to January 1, 1936, had in its employ 1 or more individuals performing services for it within this State. * * *"

In support, New Capitol cites *Hattersley v. Division of Employment Security,* 19 *N. J.* 487 (1955). The facts in *Hattersley* (at *page* 490) are readily distinguishable. There the prior business was "idle for lack of orders" and the "lease * * * had expired." The shop, according to Hattersley, "was virtually shut down." He negotiated a new lease, and although he took over the physical assets and received the seller's covenant not to compete, he did not acquire any books or records, customer lists or accounts receivable, nor did he assume the accounts payable. Hattersley worked alone and hired his first employee about six weeks after title was closed. We need not now consider which of the facts just recited are significant in cases of this kind; it is enough to say that unlike the present case there was no continuity in the operation of the business or of any employment therein.

*Hattersley* gave crucial effect to the following interpretation of "employing unit" (at *page* 492):

"* * * The language employed by the Legislature is, we believe, susceptible of but one meaning: the status of the purchaser as an 'employer' is fixed on the date of the purchase and not by events subsequent thereto. * * *"

Accordingly it was said that, assuming Hattersley "was truly a successor to the business carried on" by his vendors, he nonetheless was not a subject employer because he did

not in fact have an employee "on the date of the purchase." New Capitol construes *Hattersley* to mean that the purchaser must have an employee at the moment of purchase, while the Division urges that *Hattersley* would be satisfied if there were an employment at any time on the day of purchase, and alternatively, that if *Hattersley* is so sweeping as to deny coverage where business operations and employment are continuous as a practical matter, it should be reconsidered.

The Division forcefully depicts the anomalous consequences of an interpretation which would make continued coverage depend upon whether the purchaser did or did not have an employee at the moment of acquisition of a going concern. In the not uncommon situation in which the purchase of a going concern is made by an individual or a newly formed corporation not having an employee at that moment, it would follow that the rights of the seller's employees (who might well number in the thousands), would be grossly disturbed if a short period intervened between the sale and their technical re-employment by the purchaser, notwithstanding that realistically their employment was continuous and uninterrupted. For example, if the employees were short of 17 base weeks, they could not reach that minimum during the first 20 weeks of operation of the new employer, and if the purchase was effected in the last 19 weeks of a calendar year, no credit could be acquired until the 20th week of the following year. It is unnecessary to set forth the other situations in which like incongruities would arise. The foregoing is sufficient to demonstrate that the interpretation New Capitol urges would be disruptive of any reasonable scheme.

 We cannot think of any policy consideration which could have motivated the Legislature to intend such consequences. Rather, it seems plain to us that the Legislature included subsection (*h*)(2) to prevent precisely the result New Capitol advocates. It sought to avoid losses to the employees and to the fund by reason of transfer of ownership of a business. Nor did it limit the subsection to cases in which the sale was motivated by a purpose to evade

coverage; rather it sought broadly to protect the employees and the fund without regard to motivation. It would be absurd to say that coverage shall be continuous if the purchaser of a going concern happens to have an employee at the moment of closing, but otherwise where the purchaser is then without one, notwithstanding that in both instances the transaction relates to a going concern which the purchaser intends to continue and in the operation of which he intends to utilize employees. It is elementary that a statute should be construed to avoid absurd results. *Giordano v. City Commission of City of Newark,* 2 *N. J.* 585, 594 (1949).

█ ██ It is frequently difficult for a draftsman of legislation to anticipate all situations and to measure his words against them. Hence cases inevitably arise in which a literal application of the language used would lead to results incompatible with the legislative design. It is the proper function, indeed the obligation, of the judiciary to give effect to the obvious purpose of the Legislature, and to that end "words used may be expanded or limited according to the manifest reason and obvious purpose of the law. The spirit of the legislative direction prevails over the literal sense of the terms." *Alexander v. New Jersey Power & Light Co.,* 21 *N. J.* 373, 378 (1956); *Wright v. Vogt,* 7 *N. J.* 1, 6 (1951); *Glick v. Trustees of Free Public Library,* 2 *N. J.* 579, 584 (1949). Additionally, the statute before us is remedial and should be liberally construed to accomplish the social aim of the Legislature. *Campbell Soup Co. v. Board of Review, Division of Employment Security,* 13 *N. J.* 431, 436 (1953).

█ It is not difficult to interpret subsection $(h)(2)$ in harmony with the Division's position. It requires (1) the seller to be a subject employer and (2) the purchaser to be an employing unit. The requirement relating to the status of the seller flows from the very objective of the subsection to continue existing coverage. The requirement applicable to the purchaser, to wit, that he be an "employing unit" is expressive of a purpose to exclude liability where the purchaser does not carry on with the aid of employees.

We find nothing in the language used which suggests that the vital consideration shall be the absence or existence of an employment by the purchaser at the instant of closing. The transaction must be considered realistically and as an entirety, unaffected by trivial time hiatuses in employment which are merely incidental to the technique adopted to accomplish a transfer of a going business.

We are not aware of any decision elsewhere which deals with this problem under statutory provisions identical with ours. It may, however, be noted that other courts have found the purpose of parallel provisions in their statutes to be to continue coverage where a business is purchased with the purpose of continuing it. See *Harris v. Egan,* 135 *Conn.* 102, 60 *A. 2d* 922 (*Sup. Ct. Err.* 1948); *State ex rel. Employment Security Commission v. Skyland Crafts, Inc.,* 240 *N. C.* 727, 83 *S. E. 2d* 893 (*Sup. Ct.* 1954); *Stewart v. Maine Employment Security Commission,* 152 *Me.* 114, 125 *A. 2d* 83 (*Sup. Jud. Ct.* 1956).

The decision is affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices HEHER, OLIPHANT, BURLING, JACOBS and FRANCIS—6.

*For reversal*—Justice WACHENFELD—1.