No. 57,599

D S G Corporation, *Appellee*, v. Jerry R. Shelor, Secretary of
Human Resources for the State of Kansas, *Appellant*.

(720 P.2d 1039)

Opinion filed June 13, 1986.

*H. Dean Cotton*, of Topeka, argued the cause and was on the briefs for appellant.

*Arthur E. Palmer*, of Goodell, Stratton, Edmonds & Palmer, of Topeka, argued the cause, and *David E. Bruns*, of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

PRAGER, J.: This is an appeal by the Kansas Department of Human Resources (KDHR) from a district court decision finding that the agency's interpretation of the Kansas Employment Security Law (K.S.A. 44-701 *et seq.*) relating to "successor" employers was erroneous as a matter of law. Specifically, the district court found that the appellee, D S G Corporation was not a "successor" employer to Centro Management, Inc., under the provisions of K.S.A. 44-710a(b)(1).

The facts in this case are undisputed and are as follows: In

May of 1982, Centro Management, Inc., had a contract with the United States Department of Defense to operate the dining facilities at the Fort Riley military reservation. During that month, the department solicited competitive bids on a new contract to operate the dining facilities to take effect on the expiration of the existing contract. Approximately 40 companies submitted competitive bids for the new contract, including D S G Corporation and Centro Management, Inc. On June 11, 1982, the department awarded the new contract to D S G Corporation.

Having obtained the new contract, D S G Corporation proceeded to prepare for its operations. D S G invested approximately one-quarter million dollars for the start-up of its venture. All of the equipment for the preparation and disposal of food and the real estate needed for the operation of the facility were provided by the department of defense. D S G had no direct dealings with Centro Management, Inc., except that D S G purchased $150 worth of "used office equipment" which was left at Fort Riley by Centro Management, Inc. D S G did not acquire or succeed to any of the debts, accounts receivable, or other assets of Centro Management, Inc., upon the award of the new contract.

D S G and Centro Management, Inc., had no agreement of any kind in regard to the reemployment of Centro Management, Inc., employees. The selection of its employees for operation of the facilities was left to the sole discretion of D S G. In order to hire new employees for the new operation, D S G set up an office at Fort Riley for two weeks to accept applications. The hiring was done by five managers hired by D S G to oversee the operation. None of the management employees had ever been employees of Centro Management, Inc. However, a number of the former employees of Centro Management, Inc., applied for positions and were hired based upon their experience. Specifically, when D S G commenced operations under its new contract, 87% of the nonmanagement employees were employees who had previously worked for Centro Management, Inc.

The employees hired by D S G to work in the dining facilities are represented by the Hotel, Motel and Restaurant Workers Union. Although the employees of Centro Management, Inc., had previously been represented by the same union, it was necessary for D S G to negotiate a new and separate contract with

the union. There are approximately 70 dining facilities at the Fort Riley military reservation. Of these, D S G operates approximately 24 of the dining facilities. It is not clear from the record if these are the same dining facilities operated by Centro Management, Inc., under the previous contract.

Following the termination of its contract with the department of defense, Centro Management, Inc., continued in business and remains a corporation in good standing, duly organized and existing under the laws of the State of Kansas. Centro Management, Inc., has continued to retain its account with KDHR pursuant to the Kansas Employment Security Law. Likewise, Centro has continued to compete with D S G and has submitted bids on a number of department of defense contracts in other parts of the country, since D S G was awarded the Fort Riley contract.

On commencement of operations, D S G applied to KDHR for its own employer's account number and contribution rate. On July 30, 1982, KDHR assigned D S G a new operation account number with a new employer contribution rate of 1.94%. In September of 1982, KDHR changed its mind, terminated D S G's new account, and assigned to D S G the account number previously held by Centro Management, Inc. The department also established a contribution rate of 4.3% for D S G on the basis that it had the status of a successor to the Centro Management, Inc. In reaching this decision, the department relied upon its interpretation of K.S.A. 44-710a(b)(1). D S G took a timely administrative appeal.

On November 15, 1983, the department conducted a hearing on the issue of whether D S G's unemployment tax should be assessed based on the experience rating of Centro Management, Inc. The agency held that D S G was a "successor" to Centro Management, Inc., and therefore, the higher experience rating of Centro should be applied. D S G then sought judicial review pursuant to K.S.A. 44-710b(b). In district court D S G contended the order of the department should be reversed because it was based upon an erroneous interpretation of law which was applied to the undisputed facts in the case. The department contended that, although the interpretation of statutes is a question of law, the interpretation of the agency is entitled to great deference. The trial court found that the agency decision was

based upon an erroneous interpretation of the Kansas statutes and reversed and set aside the department's order. The Kansas Department of Human Resources brought this appeal to the appellate courts.

On the appeal, the department contends that the district court erred in disturbing the findings of fact of the agency and substituting its judgment on factual issues. We find this contention to be without merit. The facts in the case were clearly undisputed and the issues presented in the case required only an interpretation of provisions of the Kansas Employment Security Law and its application to the undisputed facts. We agree with KDHR that a district court may not substitute its judgment for that of an administrative tribunal but is restricted to considering whether, as a matter of law, (1) the tribunal acted fraudulently, arbitrarily or capriciously; (2) the administrative order is substantially supported by evidence; and (3) the tribunal's action was within the scope of its authority. Neither the district court nor an appellate court is permitted to try the case de novo and substitute its judgment for that of the administrative agency. *In re Order of Board of Tax Appeals*, 236 Kan. 406, Syl. ¶¶ 1, 2, 691 P.2d 394 (1984). However, where the facts in the case are undisputed, the applicability of a statute to the facts is a question of statutory construction to be determined by the court. *Bill George Chrysler-Plymouth, Inc. v. Carlton*, 216 Kan. 365, 532 P.2d 1351 (1975).

The interpretation of a statute is a question of law, and it is the function of the court to interpret a statute to give it the effect intended by the legislature. In determining questions of law, the trial court may substitute its judgment for that of the agency only where the statute is clear and where the administrative agency is erroneous. Ordinarily, the interpretation placed on a statute by the administrative agency charged with its enforcement is entitled to a great deal of judicial deference and may be of controlling significance. *Wallis v. Secretary of Kans. Dept. of Human Resources*, 236 Kan. 97, 101, 689 P.2d 787 (1984). The issue of law presented in this case is whether D S G is a "successor" employer under the applicable provisions of the Kansas Employment Security Law.

At the outset, it would be helpful to consider some of the basic concepts and objectives of the Kansas Employment Security Law

and the legislative scheme designed to achieve those objectives. The law was enacted in 1937 at a time when economic insecurity, due to unemployment, was a serious menace to the health, morals, and welfare of this state. In K.S.A. 44-702, the Kansas legislature declared it to be the public policy of the state that involuntary unemployment is a subject of general interest and concern which requires appropriate action by the legislature. The legislature recognized that the public could be protected by encouraging employers to provide more stable employment and by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment.

In *Whitehead v. State of Kansas Labor Department,* 203 Kan. 159, 453 P.2d 11 (1969), this court recognized that the Kansas Employment Security Law is not an isolated act on the part of a single state. The federal and state enactments represent a cooperative legislative effort by the respective governments to carry out a common public purpose which neither government could fully achieve without the other's cooperation. State statutes, such as the Kansas statutes, which provide for the creation of a state employment security fund were enacted in order to take advantage of the benefits provided by the federal security act.

The original Kansas employment security law of 1937 did not include a provision relating to the transfer of an "experience rating" from a predecessor employer to a "successor" employer. Such a provision was enacted by the Kansas legislature in March of 1945, when it adopted G.S. 1935, 44-710a(c) (1945 Supp.). The purpose and interpretation of such state statutes is discussed in Annot. 22 A.L.R.2d 673; Annot. 4 A.L.R.2d 721; 76 Am. Jur. 2d, Unemployment Compensation § 19, pp. 895-96; and 1B Unempl. Ins. Rep. (CCH) § 1307. In order to create a state employment security fund to pay unemployment benefits to the various states including Kansas, contributions to the fund were required by employers on wages paid by the contributing employer during each calendar year. At the beginning, a fixed percentage was applied to all employers. Commencing with the year 1941, experience rating provisions came into effect under which employers with stable employment records could secure reduced rates. However, new employers subject to the law for fewer than 24 consecutive months pay a rate based on their industry classification. Under the Kansas law as it existed in 1982

and as it is today, the Secretary of the Department of Human Resources is required to classify employers in accordance with their actual experience in the payment of contributions on their own behalf and with respect to benefits charged against their accounts. The employer who is successful in stabilizing unemployment will enjoy, in most cases, a reduced contribution rate. All contributions from the various employers to the fund are pooled and available to pay benefits to any individual entitled thereto, irrespective of the source of such contributions or payments in lieu of contributions.

K.S.A. 44-703, the definitions section, in subsection (h) defines the term "employer" and classifies employers into various categories, all of which are included within the term "employer." K.S.A. 44-703(h)(4) includes as an employer under the act,

"Any employing unit which acquired the organization, trade or business, or substantially all the assets thereof, of another employing unit which at the time of such acquisition was an employer subject to this act."

This section thus includes a "successor" employer within the classification of employer but does not attempt to define a "successor."

A "successor classification" is defined at K.S.A. 44-710a(b)(1), which was the statute in effect in 1982 when D S G Corporation began to operate under its new contract. That section provided:

"(b) *Successor classification.* (1) For the purposes of this subsection whenever any employing unit (whether or not an 'employing unit' within the meaning of paragraph (g) of K.S.A. 44-703 and amendments thereto), *acquires or in any manner succeeds to substantially all the employing enterprises, organization, trade or business or substantially all the assets of an employer,* excepting in any such case any assets retained by such employer incident to the liquidation of his or her obligations and who intends to continue such organization, trade, or business, *shall acquire the experience rating account of the predecessor employer consisting of the predecessor's actual contribution and benefit experience and annual payrolls.* If the successor employing unit was an employer subject to this act prior to the date of the acquisition, his or her rate of contribution for the period from such date to the end of the then current contribution year shall be the same as the rate with respect to the period immediately preceding the date of acquisition. If the successor was not an employer prior to the date of acquisition, his or her rate shall be the rate applicable to the predecessor employer or employers with respect to the period immediately preceding the date of acquisition provided there was only one predecessor or there were only predecessors with identical rates; in the event that the predecessors' rates are not identical, the successor's rate shall be a newly computed rate based upon the combined experience of the predecessors as of the computation date immediately preceding the date of acquisition." (Emphasis supplied.)

In 1983, the legislature modified K.S.A. 44-703 by adding section (dd) which defined "successor employer" as follows:

"(dd) 'Successor employer' means any employer, as described in subsection (h) of this section, which acquires or in any manner succeeds to (1) substantially all of the employing enterprises, organization, trade or business of another employer or (2) substantially all the assets of another employer."

In addition, K.S.A. 44-710a(b) was amended in 1983 as follows:

"(b) *Successor classification.* (1) For the purpose of this subsection (b), whenever an employing unit, whether or not it is an 'employing unit' within the meaning of subsection (g) of K.S.A. 44-703 and amendments thereto, becomes an employer pursuant to subsection (h)(4) of K.S.A. 44-703 and amendments thereto or is an employer at the time of acquisition and meets the definition of a 'successor employer' as defined by subsection (dd) of K.S.A. 44-703 and amendments thereto *and is controlled substantially either directly or indirectly by legally enforceable means or otherwise by the same interest or interests,* shall acquire the experience rating factors of the predecessor employer. These factors consist of all contributions paid, benefit experience and annual payrolls of the predecessor employer." (Emphasis supplied.)

It should be noted that the 1983 amendment changed the definition of "successor classification" by requiring that an employer not only meet the definition of a "successor employer" as defined by 44-703(dd), but also required that the successor be "controlled substantially either directly or indirectly by legally enforceable means or otherwise by the same interest or interests."

The Kansas Department of Human Resources in May of 1983 adopted K.A.R. 50-1-5, which defined the meaning of certain terms relating to "successor classification." That regulation provides:

"50-1-5. **Meaning of terms relating to successor classification.** The following terms are used when determining whether an employing unit is to be classified as a successor employer when acquiring the business of a predecessor employer in accordance with K.S.A. 44-703(h)(4) and 44-710a(b)(1).

"(a) Employing enterprises. 'Employing enterprises' means those business locations with employment.

"(b) Organization. 'Organization' means employees or employee positions required to continue the business.

"(c) Trade. 'Trade' means the clientele or customers which frequent the business.

"(d) Business. 'Business' means the goods sold, the services provided or some combination thereof.

"(e) Assets. 'Assets' means all items which are necessary to the normal operations of the day-to-day business."

Simply stated, the department takes the position that D S G falls within the category of a successor employer, because, under the new contract, D S G operates the same Fort Riley dining halls, with the same food equipment, the same kitchens, and whatever it takes to prepare meals and keep the same mess halls running, and with most of the same employees. Because Centro Management, Inc., had the business one day and D S G had it the next day, the department argues that D S G succeeded to the business and is, therefore, a successor employer.

It is the position of D S G Corporation that there must be something more than just a transfer of the physical assets or the place of business in order for there to be a transfer of the predecessor employer's experience rating account. It maintains that the underlying concept is that the new employing unit must succeed to and continue the business or some part thereof of the former employing unit.

Although there are no Kansas cases on this point, cases with similar facts from other jurisdictions, involving state statutes comparable to the Kansas statute, hold that such state statutes creating the status of a "successor employer" contemplate a transaction in which the purchaser, instead of merely buying physical assets as such, succeeds in some real sense to the organization, trade, or business, or substantially all the assets thereof. The underlying idea is that of continuity, the new employing unit succeeding to and continuing the business or some part thereof of the former employing unit.

In *Employment Security Com. v. Skyland Crafts, Inc.,* 240 N.C. 727, 83 S.E. 2d 893 (1954), the issue was whether Skyland Crafts was liable for contributions as a successor employer under a statute which provided in pertinent part, that an employing unit was an employer if it acquired the organization, trade, or business, or substantially all the assets, of another which at the time of such acquisition was an employer subject to the act. Skyland Crafts had purchased all of the assets from Skyland Handbag Company, which had shut down its operation prior to the purchase. Skyland Crafts also assumed the remainder of the lease on the building previously occupied by the handbag company. Skyland Crafts further employed some forty individuals who had been former employees of the handbag company. It did

not purchase the accounts receivable, customer lists, good will or right to use the trade name of the handbag company.

In that case, the North Carolina court held that, under the facts presented, the requisite continuity of a successor did not exist. The court found that:

"Crafts, Inc., [Skyland] was composed of new persons, engaged in a new business, under a new name. . . . There was no continuity of organization, trade or business. . . . Crafts, Inc., did not purport in any sense to be a continuation of or successor to the Handbag Company. *The circumstances that Crafts, Inc., was engaged in the same type of business formerly conducted by the Handbag Company is not determinative.* (Emphasis supplied.)" p. 731.

In *Stewart v. M. E. S. C.*, 152 Me. 114, 117, 125 A.2d 83 (1956), a garageman leased a garage from the widow of the former owner of the garage and also purchased tools and automotive parts from the estate of the widow's deceased husband. The garageman began operations in the same location under his own name and employed eight employees, substantially all of whom had been employed by the estate. Nevertheless, the estate retained all accounts, notes receivable, cash on hand, good will, and the new and used cars the former owner was attempting to sell. The court held that the Maine legislature, in using the terminology "acquire the organization, trade or business," contemplated a situation in which there is continuity of the enterprise relatively uninterrupted by the transfer of ownership. In the court's view, the legislative concept was one of succession to and continuation of a business, ordinarily as a going concern. The court held that, in effect, the ownership of the new business began a new enterprise and the essential elements of continuity did not exist.

There is a Missouri case with a factual situation quite comparable to the facts in the present case, *Mascom Management v. Labor & Indus. Rel. Comm.*, 586 S.W. 2d 802 (Mo. App. 1979). The *Mascom* case is of particular value because it analyzes the Missouri statute providing for a successor employer and discusses the purposes of such statutes. It states:

"Such an analysis of the statutory language is particularly appropriate when the statute is considered in the light of its purposes. On the one hand, the statute protects the basic integrity of the employment security system by providing a means of collection of delinquent accounts when the business enterprise is ongoing and the benefits and burdens have been assumed by another. So likewise, when the shoe is on the other foot and the transferee is asserting a right to the lower rate established by the transferor, if the transferee has assumed the benefits and burdens of the prior operation in whatever form and however

conveyed, it is equitable and in furtherance of the statutory purpose to stabilize conditions of employment to permit the transferee to obtain the lower rate of contribution and any value in the predecessor's account. This is done for the reason that the whole purpose of the system is to provide continuity and stability of employment. The incentive to a transferee, to continue uninterrupted and without decrease in employment the enterprise transferred, is the expectation of the lowered rate of contribution. Put another way, interpretation of the statute which emphasizes the necessity for stability in employment and the protection of the State's interest in collection of delinquent accounts, and which is based upon a realistic appraisal of the business situation, accomplishes the basic legislative goals." p. 806.

Later in the opinion the court stated:

"What has occurred in the instant case is that a new enterprise has been undertaken with fresh assets to operate a similar business in the same location. This has had the effect of continuing the employment of the employees of the old enterprise, but that salutary end should not be burdened by saddling the new enterprise with the debts of the old enterprise. It is obvious from the factual background of this case that if a new entrepreneur entering the picture was concerned that a deficiency would be imposed, it would be relatively simple to defeat the claim of the state by interrupting the operation so as to avoid there being a continuous operation. The only losers in that situation would be the employees, whose employment would be lost, and the Industrial Commission due to benefits for unemployment that would accrue to those employees." p. 807.

A similar result was reached in *State v. Kingham,* 364 S.W. 2d 289 (Tex. Civ. App. 1963).

After carefully considering the provisions of the Kansas Employment Security Law and the undisputed facts presented in the record in this case, we have concluded that the district court was correct in holding that D S G is not a "successor employer" to Centro Management, Inc. In arriving at this conclusion, we note particularly the following undisputed facts:

(1) D S G and Centro Management, Inc., were competitors for a government contract. The lower bid of D S G Corporation was accepted by the department of defense. There was no contractual relationship between D S G and Centro Management with the exception of the purchase of several old pieces of furniture for the sum of $150, when Centro Management, Inc., vacated the premises.

(2) D S G Corporation did not take over the "employing enterprises, organization, trade or business or substantially all of the assets" of Centro Management, Inc. Centro Management, Inc., remained in business to carry on its other enterprises. The record shows that Centro Management is still in business in the

State of Kansas and retains its account with KDHR in accordance with the Kansas Employment Security Law.

(3) D S G did not receive any of the benefits or burdens previously held by Centro Management, Inc. As suggested by the Missouri court in *Mascom Management v. Labor & Indus. Rel. Comm.*, 586 S.W. 2d 802, if D S G Corporation had refused to employ any of Centro Management's former employees it could easily have avoided the claim of the department that it was a successor employer. The only losers in that situation would be former Centro Management employees, whose employment would be lost, and the Kansas Department of Human Resources due to the unemployment benefits that would acrue to those employees. Such a result would have been expressly contrary to the purposes of the statute as set forth in K.S.A. 44-702 and which is discussed earlier in this opinion.

(4) D S G Corporation, by its bid, was awarded a contract giving it the right to provide food service to various dining facilities at Fort Riley. The department of defense provided the locations, the equipment necessary for the normal operations of the day to day business, and the personnel on the Fort Riley reservation who were the users of the service. It could appropriately be said that D S G Corporation succeeded the department of defense, not Centro Management, Inc.

(5) Although approximately 87% of the D S G employees under its new contract had been previously employed by Centro Management, Inc., their employment was not required by any contract between D S G and Centro Management, Inc. Each and every one of them was individually employed by D S G when the individual employees applied for a job. None of the managerial personnel employed by D S G had previously been employed by Centro. D S G did not assume the labor contract made by Centro. D S G negotiated a separate and distinct contract with the Hotel, Motel and Restaurant Workers Union. The only connection or contractual relationship between D S G and Centro Management, Inc., was the purchase of $150 worth of used office furniture.

Considering the statutes involved in this case and the undisputed facts, we hold that the district court was correct in its conclusion that D S G Corporation was not a "successor em-

ployer" to Centro Management, Inc., within the meaning of the Kansas statutes discussed above.

The judgment of the district court is affirmed.