(846 P.2d 941)

No. 68,360

HOLLE FARMS, INC., *Appellant,* v. KANSAS DEPARTMENT OF HUMAN RESOURCES, *Appellee.*

Opinion filed February 12, 1993.

*Joseph A. Knopp,* of Manhattan, for appellant.

*Don Doesken,* of Topeka, for appellee.

Before BRAZIL, P.J., LARSON, J.; and DAVID PRAGER, Chief Justice Retired, assigned.

PRAGER, C.J. Retired: This is a proceeding to determine an employer's liability for contributions under the employment security law (K.S.A. 44-701 *et seq.*). The issue is whether an employee whose duty is the sale and marketing of agricultural products is engaged in "agricultural labor" under K.S.A. 1992 Supp. 44-703(w)(1) so that the employer is exempt from unemployment insurance tax contributions.

The facts in the case are undisputed. Holle Farms, Inc., is a business entity that raises wheat and soybeans primarily as grain seed for sale to farmers, seed dealers, or other businesses.

On February 26, 1990, Eldon Goff was hired to serve existing dealers and elevators by taking orders for sales, as well as to attempt to establish new accounts for the sale of grain seeds. Goff's job duties also included laying out test plots at the dealer's location for the planting of seed grains and the promotion of the seed. Goff spent 85-90% of his time developing markets and locating new buyers. The balance of his time was spent delivering Holle Farms seed to dealers and elevators and conducting the promotions at the test plots. Goff performed none of his duties on the property of Holle Farms.

Goff worked for Holle Farms for a year and, after his employment was terminated, he filed a claim for unemployment benefits. At that time, the Kansas Department of Human Resources (KDHR) discovered that Holle Farms had failed to report Goff's wages or pay unemployment tax on those wages. KDHR demanded payment of the unemployment tax, and this dispute arose.

The hearing officer concluded that Goff was not employed in "agricultural labor" and ordered a tax liability to attach to Holle Farms. The Secretary of KDHR adopted the findings of the hearing officer and ordered tax liability to be assessed against Holle Farms in the amount of $409.58.

Holle Farms appealed to Riley District Court, which affirmed the decision of the Secretary. Holle Farms filed a timely appeal to this court.

The issue presented in this case requires an interpretation of the Kansas Employment Security Law, K.S.A. 44-701 *et seq.* and, more specifically, K.S.A. 1992 Supp. 44-703(h)(1). In *D S G Corp. v. Shelor*, 239 Kan. 312, 316, 720 P.2d 1039 (1986), the court explains the basic concepts of the employment security law in the following language:

"The law was enacted in 1937 at a time when economic insecurity, due to unemployment, was a serious menace to the health, morals, and welfare of this state. In K.S.A. 44-702, the Kansas legislature declared it to be the public policy of the state that involuntary unemployment is a subject of general interest and concern which requires appropriate action by the legislature. The legislature recognized that the public could be protected by encouraging employers to provide more stable employment and by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment."

Under the statutes, not every employment relationship in Kansas is covered by the law, nor is every employing unit required to make the unemployment insurance contributions mandated by K.S.A. 1992 Supp. 44-710(a). K.S.A. 1992 Supp. 44-703(h)(1)(A), by its definition of who is an employer and thus subject to K.S.A. 1992 Supp. 44-710(a), provides, in effect, an exemption from unemployment contributions for agricultural labor where the employing unit does not pay $20,000 or more in wages per quarter to the individuals so employed. Both parties to the appeal concede

that Holle Farms does not meet this threshold and, therefore, would not be required to make unemployment contributions for its agricultural labor.

The crux of this dispute involves whether Goff's services constitute "agricultural labor" under K.S.A. 1992 Supp. 44-703(w), which provides:

"(w)(1) 'Agricultural labor' means any remunerated service:

"(A) On a farm, in the employ of any person, in connection with cultivating the soil, or in connection with raising or harvesting any agricultural or horticultural commodity, including the raising, shearing, feeding, caring for, training, and management of livestock, bees, poultry, and fur-bearing animals and wildlife.

"(B) In the employ of the owner or tenant or other operator of a farm, in connection with the operating, management, conservation, improvement, or maintenance of such farm and its tools and equipment, or in salvaging timber or clearing land of brush and other debris left by a hurricane, if the major part of such service is performed on a farm.

"(C) In connection with the production or harvesting of any commodity defined as an agricultural commodity in section (15)(g) of the agricultural marketing act, as amended . . . or in connection with the ginning of cotton, or in connection with the operation or maintenance of ditches, canals, reservoirs or waterways, not owned or operated for profit, used exclusively for supplying and storing water for farming purposes.

"(D)(i) In the employ of the operator of a farm in handling, planting, drying, packing, packaging, processing, freezing, grading, storing, or *delivering* to storage or *to market* or to a carrier for transportation to market, in its unmanufactured state, any agricultural or horticultural commodity; but only if such operator produced more than ½ of the commodity with respect to which such service is performed;

"(ii) in the employ of a group of operators of farms (or a cooperative organization of which such operators are members) in the performance of service described in paragraph (i) above of this subsection (w)(1)(D), but only if such operators produced more than ½ of the commodity with respect to which such service is performed;

"(iii) the provisions of paragraph (i) and (ii) above of this subsection (w)(1)(D) shall not be deemed to be applicable with respect to service performed in connection with commercial canning or commercial freezing or in connection with any agricultural or horticultural commodity after its delivery to a terminal market for distribution for consumption.

"(E) On a farm operated for profit if such service is not in the course of the employer's trade or business.

"(2) 'Agricultural labor' does not include service performed prior to January 1, 1980, by an individual who is an alien admitted to the United States to perform service in agricultural labor pursuant to sections 214(c) and 101(a)(15)(H) of the federal immigration and nationality act.

"(3) As used in this subsection (w), the term 'farm' includes stock, dairy, poultry, fruit, fur-bearing animal, and truck farms, plantations, ranches, nurseries, ranges, greenhouses, or other similar structures used primarily for the raising of agricultural or horticultural commodities, and orchards." (Emphasis added.)

In interpreting the statute, the court is required to follow established rules of construction. In *Director of Taxation v. Kansas Krude Oil Reclaiming Co.*, 236 Kan. 450, 454, 691 P.2d 1303 (1984), it is stated:

"The fundamental rule in Kansas is that a tax exemption statute is to be construed strictly in favor of imposing a tax and against an allowance of an exemption for one who does not clearly qualify. [Citation omitted.] The burden of establishing an exemption from taxation is upon the one claiming the exemption. [Citation omitted.]"

The definitions of "agricultural labor" set forth in K.S.A. 1992 Supp. 44-703(w)(1)(A) and 44-703(w)(1)(B) are not applicable in this case because none of Goff's sales and marketing activities were performed on appellant's farm. The rationale of the court set forth in *Brookover Feed Yards, Inc. v. Carlton, Commissioner*, 213 Kan. 684, 518 P.2d 470 (1974), cited by appellant, is not applicable because, in that case, the clerical employees worked on the feedlot premises. In the case before us, Goff's duties were performed away from the farm premises. For the same reason, K.S.A. 1992 Supp. 44-703(w)(1)(E) is not applicable.

On this appeal, Holle Farms relies on the definitions of "agricultural labor" set forth in K.S.A. 1992 Supp. 44-703(w)(1)(C) and (D). In our judgment, the hearing officer, the Secretary of KDHR, and the district court all correctly concluded that K.S.A. 1992 Supp. 44-703(w)(1)(C) was not applicable to Goff's work. That section applies to the "production or harvesting" of an agricultural commodity. Goff's activity was not connected with the production or harvesting of appellant's seed grain crops. He was a salesman whose efforts were directed toward market creation. The legislature did not include the *selling* of an agricultural commodity. Therefore, K.S.A. 1992 Supp. 44-703(w)(1)(C) is not applicable.

We also are convinced that the language of K.S.A. 1992 Supp. 44-703(w)(1)(D) does not place Goff's work in the category of "agricultural labor." That section expressly includes "handling, planting, drying, packing, packaging, processing, freezing, grad-

ing, storing, or delivering to storage or to market" any agricultural or horticultural commodity.

Goff spent 10-15% of his time delivering grain to dealers, but the transportation of those small amounts was only incidental to Goff's sales calls. The legislature did not include "selling" as one of the exempt activities in K.S.A. 1992 Supp. 44-703(w)(1)(D). It is one of the most common rules of statutory interpretation that the mention or inclusion of one thing implies the exclusion of another. *State v. Luginbill*, 223 Kan. 15, 20, 574 P.2d 140 (1977).

We hold that the district court was correct in affirming the Secretary's decision that Goff was not engaged in "agricultural labor" and, therefore, Holle Farms is not exempt from liability for unemployment insurance taxation.

Affirmed.