STATE OF MAINE                                    SUPERIOR COURT

Cumberland, ss.                                   Civil Action



SUAD ALAGIC  et als.,

Plaintiffs

v.                                                Docket No. PORSC-CV-17-26

UNIVERSITY OF MAINE SYSTEM,

Defendant

## ORDER ON DEFENDANT'S MOTION FOR RECONSIDERATION

Defendant University of Maine System's Motion For Reconsideration is before the court, with Plaintiffs' opposition and Defendant's reply memorandum. The court elects to decide the Motion without oral argument. *See* M.R. Civ. P. 7(b)(7).

The Motion For Reconsideration is directed to the court's Order on Pending Motions docketed November 17, 2017. In that Order, the court granted Plaintiffs' Motion for Partial Summary Judgment, concluding that Plaintiffs were entitled to statutory remedies for unpaid wages because Defendant failed to pay Plaintiffs the wages due to them under the collective bargaining agreement [CBA] within the statutory deadline for payment. *See* 26 M.R.S.A. §§ 626, 626-A.

Defendant's Motion contends that the court misinterpreted the Defendant's primary argument, which is that the employment agreement between it and the Plaintiffs allowed the Defendant to withhold payment of wages that were the subject of Plaintiffs' grievance until after the arbitrator had ordered the Defendant to pay

1

Plaintiffs. According to the Defendant, "the language of the CBA and the past conduct of the University, the Union, and the members of the faculty demonstrate that there has been a long-standing policy that any wages or other payments that are the subject of a grievance pursuant to Article 15 of the CBA are not 'due' until the grievance has been resolved." Defendant's Reply in Support of its Motion for Reconsideration at 2.

In support of its argument, Defendant cites to Maine Law Court decisions in which the court has held that the terms, including due date, under which employees are entitled to payment under the statutes in question are determined by the employment agreement. *See Rowell v. Jones & Vining, Inc.*, 524 A.2d 1208, 1210-11 (Me. 1987); *accord, Richardson v. Winthrop School Dep't*, 2009 ME 109, ¶ 7, 983 A.2d 400, 402; *Burke v. Port Resort Realty Corp.*, 1998 ME 193, ¶ 5, 714 A.2d 837, 839.

Plaintiffs' Opposition points out what the court agrees is the fundamental flaw in the Defendant's argument: Defendant has not made a prima facie showing, for purposes of defeating Plaintiffs' Motion for Partial Summary Judgment, that the terms of its employment agreement with Plaintiffs include any "long-standing policy" that supports its argument.

As a threshold matter, Defendant's claim in its Motion that it "paid wages that were the subject of the grievance to Plaintiffs *as soon as the arbitrator determined they were due*," Defendant's Motion for Reconsideration at 5 (emphasis in original), is not supported by the language of the arbitration award. The award determined that the payment to Plaintiffs was due by no later than June 30, 2016:

2

The grievants received only 4/12 of the salary they were entitled to between September 1 and December 31, 2014 instead of 4/9. They never recouped that difference. As a result they were underpaid for their work during that time frame. Based on past practice, the University would probably have been entitled to withhold that differential until the grievants were separated from employment on June 30, 2016, but I see no contract language, bargaining history, or communicated understanding between the parties that permitted it to just not pay the differential that accrued during the fall semester of 2014 at all.

Amended Award at 1, 19-20 (Feb. 1, 2017).

Quite clearly, the arbitrator determined that the additional amounts that Plaintiffs were owed for the fall 2014 semester were "due" by no later than June 30, 2016, seven months before Defendant actually made payment, and that there was no past practice that justified the Defendant in continuing to withhold payment.

Although the arbitration award is not *res judicata* as to this case, the arbitrator's conclusion is consistent with this court's view of the summary judgment record in this case. Just as the arbitrator decided there was no showing of any past practice that would allow the University to continue withholding payment of the additional amounts due to Plaintiffs after June 30, 2016, the court found no support—much less support rising to the level of a prima facie showing—in the summary judgment record for the Defendant's argument that it was entitled to withhold payment until after the arbitration decision.

First, Defendant's summary judgment filing does not identify any term of the CBA or other document confirming a past practice or "longstanding policy" that supports its position. In fact, the salary and retrenchment articles of the CBA plainly required the Defendant to continue paying the Plaintiffs their salaries from the date

of the retrenchment notice until June 30, 2016.   *See* Agreement Between University of Maine System and Associated Faculties of the Universities of Maine, MEA/NEA 2013-15, Arts. 17, 20.

Second, the retrenchment letters sent to Plaintiffs likewise commit the Defendant to maintaining payment of the Plaintiffs' salaries throughout the 18-month notice period until June 30, 2016.

Third, the "additional facts" in Defendant's Statement of Additional Material Facts that purport to support the "longstanding policy" boil down to a single fact: this is the first time AFUM and/or its members have claimed section 626 and 626-A statutory remedies for wages that were found to be due as the result of a grievance. *See* Defendant's Statement of Additional Material Facts ¶¶ 5-7; *see also* Affidavit of Mark Schmelz ¶¶ 6-8.

Assuming the truth of that assertion for purposes of summary judgment, it would not defeat Plaintiffs' claims in this case.  Essentially, the Defendant's argument is that Plaintiffs cannot invoke the section 626 and 626-A statutory remedies because they have never done so before.  That, in substance, is a waiver argument—that Plaintiffs' prior forbearance operates as a waiver of Plaintiffs' rights as employees under sections 626 and 626-A.

Even were there a past practice as the Defendant contends, it could not operate as a waiver of the individual Plaintiffs' rights under the Maine employment statutes. In *Cooper v. Springfield Terminal Railway*, the Law Court said, "statutes that impose minimum labor standards without affecting collective bargaining activity *are not*

4

*waivable* in a collective bargaining agreement. Moreover, when a term contained in a collective bargaining agreement conflicts with minimum standards legislation, the former must yield." 635 A.2d 952, 955 (Me. 1993) (emphasis added). [1] If the express terms of a CBA cannot operate as a waiver of an employee's statutory rights, it can hardly be contended that the absence of a previous claim for the statutory remedies by an employee is sufficient to waive the employee's rights to those remedies.

Finally, for the court to accept the Defendant's argument that the Plaintiffs' wages became due only as of the arbitrator's award would set a precedent utterly contrary to the remedial purposes of the Maine employment statute. The plain purpose of the statutory remedies is to deter employers from withholding wages after the wages are "in fact, due." This means, quite simply, that an employer withholds wages at its peril once an employee has made a demand for payment. If an arbitrator or a court later decides that the withheld wages should have been paid upon demand because they were "in fact, due," the employer owes the statutory damages and attorney fees. That is exactly what the Law Court held in *Bisbing v. Maine Medical Center*, 2003 ME 49, ¶ 5, 820 A.2d 582.

In conclusion, the summary judgment record establishes that Plaintiffs' wages were "in fact, due" for purposes of section 626-A, by no later than June 30, 2016—the end of the retrenchment notice period. Plaintiffs had demanded payment before and

---

[1]  The statute once contained a provision that allowed the statutory payment mandates to be modified in a collective bargaining agreement, but that provision has been repealed. *See* 26 M.R.S. § 626-B, *repealed by* 1999 Me. Pub. L. c. 465, § 6.

after that date, but payment was not made until February 2017. Plaintiffs were thus entitled to invoke the statutory remedies and to be granted partial summary judgment.

For these reasons, Defendant's Motion for Reconsideration is denied.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated January 2, 2018

_____
A. M. Horton, Justice

6

*Suad Alagic et al. vs. University of Maine*, PORSC-CV-17-26

Attorney for Plaintiffs:

Donald Fontaine, Esq.
Law Offices of Donald Fontaine
PO Box 7590
Portland, ME  04112

Attorney for Defendant:

Glenn Israel, Esq.
Bernstein Shur
PO Box 9729
Portland, ME  04104-5029

**STATE OF MAINE**

Cumberland, ss.

**SUPERIOR COURT**

Civil Action

STATE OF MAINE
Cumberland, ss. Clerk's Office

NOV 1 7 2017
10:28 a.m.
RECEIVED

**SUAD ALAGIC et als.,**

Plaintiffs

v.

Docket No. PORSC-CV-17-26

**UNIVERSITY OF MAINE SYSTEM,**

Defendant

## ORDER ON PENDING MOTIONS

Plaintiffs' Motion for Partial Summary Judgment and Defendant's Opposition and cross-motion for summary judgment came before the court for oral argument November 8, 2017.

In this case, Plaintiffs seek remedies under the Maine wage payment statute, including an award of unpaid wages, an additional amount equal to twice the amount of such wages, and costs of suit, including reasonable attorney fees. *See* 26 M.R.S.A. §§ 626, 626-A. Defendant claims to have paid Plaintiffs everything they are entitled to within the time required by the statute.

Based on the entire record, the court grants the Plaintiffs' Motion.

### Background

The thirteen Plaintiffs[1] were formerly employed as tenured professors by the

---

[1] The Plaintiffs are Suad Alagic, Rachel Bouvier, Kaitlin Briggs, Paul Christiansen, Claire Congdon, Monroe Dubois, Nancy Erickson, Stephen Pollock, Chris Powell, Bruce Roberts, Kent Ryden, Dan Stasko and John Wise.

1

Defendant University of Maine System. Their salaries were fixed according to the terms of various contracts, which called for them to work during the nine months of the academic year (but not during the three-month summer recess). (Supp'g S.M.F. ¶¶ 4a, 38.) Pursuant to University policy, the earnings plaintiffs accrued during the course of their nine-month academic appointments would be disbursed over a twelve-month pay period, resulting in each plaintiff receiving a monthly check for 1/12th of their nine-month salary. (*Id.* ¶ 36).

At all relevant times, the Plaintiffs were members of a collective bargaining unit represented by Associated Faculties of the University of Maine (AFUM). (*Id.* ¶¶ 3, 39.) At all relevant times, a series of collective bargaining agreements (CBA) between AFUM and the Defendant have been in effect, governing the terms and conditions of Plaintiffs' employment. (*Id.*) The applicable CBA permitted the Defendant to "retrench", i.e. terminate, the Plaintiffs as employees on appropriate notice, and called for "total compensation" equal to 18 months' salary to be paid following retrenchment. (*See* CBA art. 17).

Plaintiffs performed their professional responsibility as professors during the fall semester of the 2014-15 academic year. In a retrenchment letter dated October 28, 2014, Defendant notified each of the Plaintiffs that their positions would be discontinued effective December 31, 2014 and that they would have no professional obligations to Defendant after that date. (Supp'g S.M.F. ¶ 1.) The Plaintiffs were paid 1/12 of their salary each month during September through December 2014. Each of the Plaintiffs began receiving the 18 months of retrenchment pay in January

2

2014; this pay continued through June 2016. (*Id.* ¶ 4.)

On September 28, 2015, the attorney for AFUM sent an e-mail to Defendant's attorney, asserting that the Plaintiffs were owed an additional two months' pay for the fall of 2014, because they had earned half of their contracted annual pay by working through the first of the two semesters of the 2014-15 academic year, but had only received one-third of their annual pay, for the four months of the fall semester. (Supp'g S.M.F. ¶¶ 11, 36.)

In response to the request, Defendant on September 29, 2015 declined to pay Plaintiffs any further amounts for work performed between September and December 2014. *(Id.* ¶ 23.) Defendant's position was essentially that, because the CBA referred to the 18 months of retrenchment pay as "total compensation," Plaintiffs were not entitled to any payment after their last day of work, other than retrenchment pay.

On October 18, 2015, AFUM filed a written grievance on behalf of the Plaintiffs for the additional pay they claimed to be owed for the fall 2014 semester. (*Id.* ¶ 12.) A grievance hearing was held November 15 and December 8, 2016. (*Id.* ¶¶ 16-17.) Before and at the grievance hearing, Plaintiffs made formal demand for the additional pay they claimed to be owed for the fall 2014 semester. (*Id.* ¶¶ 14-17.)

In an initial arbitration award dated January 12, 2017, the arbitrator noted that the arguments presented by Plaintiffs and Defendant were "plausible, and the intersection of wages for work performed before the retrenchment period commenced, and the [retrenchment] terms of Article 17 has no precedent." Arbitration Award at 12 (Jan. 12, 2017). The initial award determined that the AFUM grievance was

3

untimely, but noted that the Plaintiffs had shown they were due pay for the fall 2014 semester beyond the four months (or 4/12) of annual pay they had received, albeit not all that they were demanding. *Id.* at 15, 16-18. The arbitrator found that they were entitled to be paid 4/9 of their annual pay, not the 6/12 of annual pay that the Plaintiffs had sought. *Id.* at 11.

On January 18, 2017, the Plaintiffs filed their Complaint in this case.

On January 20, 2017, Plaintiffs' attorney requested, via e-mail and letter to Defendant's attorney, that Defendant determine the amount of wages that remain unpaid to each of the grievants. (*Id.* ¶ 19.) The request included a demand for payment of the wages due to each grievant plus an amount equal to twice the wages for liquidated damages. (*Id.*)

On February 1, 2017, the arbitrator amended the award by changing her finding about timeliness—the amended award determined that the grievance was timely and ordered Defendant to make Plaintiffs whole for the difference between the 4/12 of their annual salary that they were paid for the fall semester in 2014 and the 4/9 to which they were entitled. (*Id.* at ¶ 20.) *See* Amended Award at 1, 19-20 (Feb. 1, 2017).

On February 3, 2017, following receipt of the arbitrator's amended award, Defendant made payment to each of the Plaintiffs for what the arbitrator had awarded. (Def.'s A.S.M.F. ¶ 8.) The amount of the payment was based on a formula that Defendant has used in the past, and continues to use, to provide compensation for "accrued salary" to other academic-year employees who cease to be employed at the end of a calendar year rather than at the end of an academic year. (*Id.* ¶ 9.) The total

4

additional amount paid to all of the Plaintiffs was approximately $148,000. (*Id.* ¶ 10.)

Plaintiffs were not satisfied with the payment and asked the arbitrator to order Defendant to pay them the difference between what they were paid on February 3, 2017 and the two additional months of salary they initially demanded. (*Id.* ¶ 11.) This request was denied by the arbitrator in a decision dated June 29, 2017. (*Id.* ¶ 12.)

Mark Schmelz, director of labor relations for Defendant, asserts that in prior cases where an arbitrator has interpreted the CBA in a way that results in additional compensation being owed to a member of the AFUM, Defendant has made payment shortly after receipt of the decision. (*Id.* ¶ 6.) No claim for the statutory remedies of double damages and attorney fees has ever been made by the AFUM or any of its members based on an argument that Defendant is obligated to pay disputed wages prior to receipt of an arbitrator's decision interpreting the language of the CBA. (*Id.* ¶ 7.)

Standard of Review

"The function of a summary judgment is to permit a court, prior to trial, to determine whether there exists a triable issue of fact or whether the question[s] before the court [are] solely . . . of law." *Bouchard v. American Orthodontics*, 661 A.2d 1143, 44 (Me. 1995). "[S]ummary judgment is appropriate when the portions of the record referenced in the statements of material fact disclose no genuine issues of material fact and reveal that one party is entitled to judgment as a matter of law." *Currie v. Indus. Sec., Inc.*, 2007 ME 12, ¶ 11, 915 A.2d 400. "A material fact is one that can affect the outcome of the case, and a genuine issue exists when there is sufficient evidence for a

5

fact finder to choose between competing versions of the fact." *Lougee Conservancy v. City-Mortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.3d 774 (quotation omitted).

Analysis

*1. The Issue Before the Court*

Clarification of what issue is before the court is appropriate before any discussion of the merits.

Plaintiffs have filed a partial motion for summary judgment that asks for a determination that Plaintiffs can seek an award of the double damages and attorney fees and costs that are allowed for violation of the Maine wage payment law. *See* 26 M.R.S. §§ 626, 626-A.[2]

---

[2] Sections 626 and 626-A of title 26, Maine Revised Statutes, define an employer's duty to pay wages owed to an employee leaving employment and the employee's remedy for violation of that duty.

Section 626, as it was at all relevant times, read in pertinent part:

An employee leaving employment must be paid in full within a reasonable time after demand at the office of the employer where payrolls are kept and wages are paid. For purposes of this subchapter, a reasonable time means the earlier of either the next day on which employees would regularly be paid or a day not more than 2 weeks after the day on which the demand is made.

An action for unpaid wages under this section may be brought by the affected employee or employees or by the Department of Labor on behalf of the employee or employees. An employer found in violation of this section is liable for the amount of unpaid wages and, in addition, the judgment rendered in favor of the employee or employees must include a reasonable rate of interest, an additional amount equal to twice the amount of those wages as liquidated damages and costs of suit, including a reasonable attorney's fee.

In 2017, the Maine Legislature amended section 626 to delete the reference to wages being "paid in full within a reasonable time after demand" and to add, in its place, a requirement that a departing employee's wages be paid in full "no later than the employee's next established payday." P.L. 2017, ch. 219, § 11 (effective Nov. 1, 2017).

6

Accordingly, what the Plaintiffs ask is for the court to decide that they are entitled to the statutory remedies of double damages and attorney fees, and to establish the amount of their award.

Defendant's responsive cross-motion seeks summary judgment in full on the Plaintiffs' claims. In other words, Defendant asks the court to determine that the Plaintiffs have been paid everything they are owed, and that they are not entitled to the statutory remedies.

The sole issue before the court, therefore, is whether the Plaintiffs are entitled to the statutory remedies in sections 626 and 626-A, title 26, Maine Revised Statutes.

2.  *The Merits*

Plaintiffs' position is that sections 626 and 626-A provide for statutory remedies in the form of double damages, attorney fees, interest and costs when an

---

Section 626-A reads in pertinent part:

> Whoever violates any of the provisions of sections 621-A to 623 or section 626, 628, 629 or 629-B is subject to a forfeiture of not less than $100 nor more than $500 for each violation.

> Any employer is liable to the employee or employees for the amount of unpaid wages and health benefits. Upon a judgment being rendered in favor of any employee or employees, in any action brought to recover unpaid wages or health benefits under this subchapter, such judgment includes, in addition to the unpaid wages or health benefits adjudged to be due, a reasonable rate of interest, costs of suit including a reasonable attorney's fee, and an additional amount equal to twice the amount of unpaid wages as liquidated damages.

> Remedies for unpaid wages do not become available to the employee except as follows. If the wages are clearly due without a bona fide dispute, remedies are available to the employee 8 days after the due date for payment. If there is a bona fide dispute at the time payment is due, remedies become available to the employee 8 days after demand when the wages are, in fact, due and remain unpaid.

employee fails to pay wages due within the statutory deadline, (2) Defendant failed to pay Plaintiffs in full by the deadline, and (3) Plaintiffs are entitled to those remedies.

Defendant raises several arguments in response, only one of which requires extended discussion.

First, the Defendant contends that the collective bargaining history between the Defendant and the AFUM, during which there has never been any claim for statutory remedies, militates against any award of such remedies in this case. This argument fails, because there is nothing in the current statute that exempts or otherwise removes employee wages paid pursuant to a collective bargaining agreement from the scope of the statute. *See Soucie v. Acton School Committee*, 2014 Me. Super. LEXIS 216 at * 3-4 (Fritzsche, J.). There used to be such a section, but it was repealed in 1999. *See* 26 M.R.S. § 626-B, *repealed by* 1999 Me. Pub. L. c. 465, § 6.

Moreover, there is nothing in the collective bargaining agreement between AFUM and the Defendant that waives unit members' recourse under the Maine wage law, nor could there be. *See Cooper v. Springfield Terminal Railway*, 635 A.2d 952, 955 (Me. 1993) ("Statutes that impose minimum labor standards without affecting collective bargaining activity are not waivable in a collective bargaining agreement. Moreover, when a term contained in a collective bargaining agreement conflicts with minimum standards legislation, the former must yield").

Thus, whatever has been the history between the AFUM and the Defendant, it cannot be used to deprive the Plaintiffs of their rights under 26 M.R.S. §§ 626, 626-A.

8

The argument Defendant proffers that requires more consideration relies on the following provision of 26 M.R.S. § 626-A:

> Remedies for unpaid wages do not become available to the employee except as follows. If the wages are clearly due without a bona fide dispute, remedies are available to the employee 8 days after the due date for payment. If there is a bona fide dispute at the time payment is due, remedies become available to the employee 8 days after demand when the wages are, in fact, due and remain unpaid.

26 M.R.S. § 626-A.

Defendant asserts that the issue that went to grievance arbitration constituted a "bona fide dispute" for purposes of the law. The Defendant says that "in fact, due" must mean something different than "clearly due." Defendant contends that when there is a "bona fide dispute" about whether, or in what amount, wages are due, the wages are not considered to be, "in fact, due" until the resolution of the bona fide dispute.

The Defendant says that the amount due to Plaintiffs became "in fact, due" for purpose of triggering any entitlement to statutory remedies only when the arbitrator issued her amended award and decided that the Plaintiffs were entitled to be paid 4/9 rather than 4/12 of their annual salaries. Defendant says that, because Defendant paid Plaintiffs what the arbitrator said was owed two days after the amended award, *i.e.* well before the eight-day statutory deadline, Plaintiffs are not entitled to seek any statutory remedies in this case.

For purposes of their motion, Plaintiffs do not dispute that the question of what

9

they were due for the fall 2014 semester was a "bona fide dispute,"[3] but they disagree with the Defendant's reading of the "bona fide dispute" provision of section 626-A.

Plaintiffs assert that the wages are, "in fact, due" when they are earned. Thus, under Plaintiffs' interpretation, the resolution of any "bona fide dispute" regarding whether the wages were earned has no bearing on when the wages become, "in fact, due." They say that the Defendant's duty to pay accrued after their demand to be paid, not after the arbitrator's award or amended award. Plaintiffs assert that any argument that the wages were not "in fact, due" until after the completion of arbitration is contrary to the statute's purpose of ensuring the prompt payment of wages.

Thus, the issue the court confronts does not concern any question of fact. Instead it is a matter of pure statutory interpretation that presents questions of law. *State v. Bragdon*, 2015 ME 87, ¶ 9 120 A.3d 103 (citation omitted).

When interpreting a statute, the court seeks "to give effect to the intent of the Legislature by examining the plain meaning of the statutory language and considering the language in the context of the whole statutory scheme." *Darling's v. Ford Motor Co.*, 1998 ME 232, ¶ 5, 719 A.2d 111 (citations omitted). The court interprets "the

---

[3] In their memorandum filed in support of their motion for summary judgment, plaintiffs "assume for the purposes of this brief" that a bona fide dispute existed when plaintiffs made their demands. (Pl.'s Mot. Summ. J. 11.) Their assumption is consistent with the arbitrator's own characterization of the dispute. She notes in both the initial award and the amended award:

> It is not surprising that the University and the Association were unable to resolve the issues they now bring to arbitration. Both of their arguments are plausible, and the intersection of wages for work performed before the retrenchment period commenced and the terms of Article 17 has no precedent.

Award at 12; Amended Award at 13.

10

plain language by taking into account the subject matter and purposes of the statute, and the consequences of a particular interpretation." *Dickau v. Vt. Mut. Ins. Co.*, 2014 ME 158, ¶ 21, 107 A.3d 621 (citation omitted). In determining a statute's practical operation and potential consequences, the court "may reject any construction that . . . creates absurd, illogical, unreasonable, inconsistent, or anomalous results if an alternative interpretation avoids such results." *Id.* (quotation omitted).

"Remedial statutes should be liberally construed to further the beneficent purposes for which they are enacted." *Director of Bureau of Labor Standards v. Cormier*, 527 A.2d 1297, 1300 (Me. 1987) (citation omitted).[4] No matter how liberal the courts construction, however, the statute must be interpreted as written. *Stewart v. Maine Employment Sec. Com.*, 152 Me. 114, 120-121, 125 A.2d 83, 86 (Me. 1956).

When a statute is ambiguous, the court may look beyond the plain language of the statute and the context of the statutory scheme "to indicia of legislative intent such as the statute's history and its underlying policy." *Fuhrmann v. Staples*, 2012 ME 135, ¶ 23, 58 A.3d 1083 (quotation omitted). "A statute is ambiguous if it is reasonably susceptible to different interpretations." *Id.* (quotation omitted).

The "bona fide dispute" provision, contained in the paragraph beginning with, "Remedies for unpaid wages," was added to the statute in 1999. It entered the legislative process through a committee amendment to the original bill. Comm.

---

[4] A remedial statute is one intended to reform or extend existing rights or to correct defects and eliminate mischief in a pre-existing statute. BALLANTINE'S LAW DICTIONARY 1088 (3d ed. 2010). The wage payment statute is plainly a remedial statute. *See Burke v. Port Resort Realty Corp.*, 1999 ME 138, ¶ 9, 737 A.2d 1055

11

Amend. A to L.D. 292, No. H-477 (119th Legis. 1999), LR0097(2). The bill summary

attached to the amendment describes the purpose of the new remedies provision as

follows:

> The amendment defines when wages are considered unpaid for purposes
> of determining remedies for employees. Wages are unpaid if they are due
> and remain unpaid for 8 days after they are clearly due or 8 days after
> demand *if they are proven to be due despite a basis for dispute.*

*Id.* at 4-5, LR0097(2) (emphasis added).

The phrase "proven to be due despite a basis for dispute" adds some support to

the Defendant's contention that wages are not, "in fact, due" until the "bona fide

dispute" is resolved.

However, Plaintiffs point out that, well after the "bona fide dispute" provision

entered section 626-A in 1999, the Law Court declined to apply it in a case brought

under 26 M.R.S. § 626. *See Bisbing v. Maine Medical Center*, 2003 ME 49, 820 A.2d

582.

In *Bisbing*, a physician sued the hospital under 26 M.R.S. § 626 for unpaid

accrued vacation pay that the hospital claimed was not due because he had used all of

his vacation time. *Id.*, 2003 ME 49, ¶ 2. A jury decided that he was owed $27,500 in

vacation pay. *Id.* The Law Court noted that "[t] he jury was not asked whether [the

defendant] MMC had acted in bad faith." *Id.* The court trebled the damages "pursuant

to section 626" and entered judgment for the trebled amount and attorney fees. *Id.*

Although the Law Court's opinion is not specific, it appears that the defendant

attempted to raise the section 626-A "bona fide dispute" provision as a defense to the

claim for statutory remedies, both at the trial court and on appeal. *Id.* The Law Court addressed the defendant's position as follows:

> MMC advances numerous interpretive arguments, asserting the existence of an implied bad faith element because section 626 is allegedly a penal statute; because it should be read together with a related statute, 26 M.R.S. § 626-A . . . We need not address any of these arguments because section 626 is unambiguous.

*Id.* ¶ 5.

Section 626 and section 626-A both contain statutory remedies provisions for double damages and attorney fees, but only section 626-A contains the "bona fide dispute" provision. There is no comparable provision in section 626. Why the statutory remedies language appears in both section 626 and section 626-A is unclear. Section 626 imposes the duty to pay and section 626-A specifies the penalties for violating the duty. The fact that section 626-A does not impose any duty to pay and is titled "Penalties" suggests that it should, in fact, be read together with section 626.

On the other hand, section 626 undeniably contains its own freestanding remedies provision, albeit one that duplicates the one in section 626-A. Thus, the Law Court's rejection of the defendant's argument that sections 626 and 626-A should be read together must mean that a claim brought under section 626 is not subject to the section 626-A "bona fide dispute" provision. This court sees no other way to explain the absence of any discussion or even mention of the section 626-A "bona fide dispute" provision in the *Bisbing* opinion.[5]

---

[5] In other cases decided after the 1999 amendment to section 626-A, the Law Court again addressed section 626 claims without any mention of the section 626-A "bona fide dispute" provision, but it is not

13

Thus, the *Bisbing* decision does not provide any particular interpretation of the section 626-A "bona fide dispute" provision. It reflects only the Law Court's view that the provision does not apply to claims brought under section 626.

For that reason, the court concludes that the result on the Plaintiffs' claims under section 626 is dictated by the result in *Bisbing*, meaning that Plaintiffs are entitled to the statutory remedies on their section 626 claim because it is not subject to the section 626-A "bona fide dispute" provision.

However, Plaintiffs are also asserting a section 626-A claim, and their request for double damages and attorney fees is made under section 626-A only.[6] Thus, it remains necessary to interpret the "bona fide dispute" provision of section 626-A.

The court adopts the Plaintiffs' view of when the right to penalties are triggered under section 626-A—eight days after demand is made and the wages are in fact due. As noted above, the reference in the legislative summary to the 1999 amendment to disputed wages not being payable until eight days after they are "proven to be due

---

clear that the issue of the employer's good faith or bad faith was raised in those cases. *See Avery v. Kennebec Millwork, Inc.*, 2004 ME 147, 861 A.2d 634; *Bernier v. Merrill Air Eng'rs*, 2001 ME 17, 770 A.2d 97.

[6] Plaintiffs' Complaint recites that it is brought under both sections 626 and 626-A, but their request for double damages is specifically requested under section 626-A only:

> WHEREFORE, Plaintiffs pray this honorable Court pursuant to 26 M.R.S.A. § 626 and § 626-A to award Plaintiffs:
>
> 1. Their unpaid wages plus interest;
>
> 2. Pursuant to 26 M.R.S.A. § 626-A an additional amount equal to twice the amount of such wages as this Court finds to be due; . . .

Complaint at 2.

despite a basis for dispute" does furnish some support for the Defendant's position. But "proven to be due" does not necessarily mean proven in court.

This reading provides a powerful incentive for employers to resolve wage disputes promptly. When there is a "bona fide dispute," the statute gives the employer eight days, after the employee has made a demand, to investigate and resolve the dispute and pay what the employer determines to be owed. An employer who elects to refuse payment based on a dispute needs to be right, or will face the statutory penalties. That outcome is consistent with the remedial purpose of the statute.

3. *Summary Judgment*

The remaining question is whether the Plaintiffs are entitled to partial summary judgment on their claims for the statutory remedies. The record plainly establishes that the Plaintiffs made multiple demands for payment in 2015, 2016 and 2017 and were not paid the remainder of what the arbitrator decided they were due until long after the earlier demands. Thus, to the extent that the section 626-A "bona fide dispute" provision applies, the Plaintiffs did not file this case too soon (i.e., before the statutory remedies had been triggered), as Defendant contends.[7]

The fact that the Plaintiffs demanded more pay than they eventually were granted under the arbitrator's amended award does not relieve the Defendant of its duty to pay what was due. *See Burke v. Port Resort Realty Corp.*, 1999 ME 138, ¶9,

_____

[7] Defendant has argued that, by filing this case before the arbitrator's amended award was issued, the Plaintiffs filed too soon and lost any entitlement to statutory remedies. That argument applies only to the section 626-A portion of their claims, and it fails because the Defendant's deadline to pay under the "bona fide dispute" provision expired eight days after demands for payment that were made long before the amended award.

15

737 A.2d 1055 ("It would be inconsistent with the language and the protective purpose of section 626 to hold that an employer is excused from its requirements when an employee does not make an error-free demand for payment").

Assuming the Plaintiffs were indeed owed the additional amounts that the arbitrator's amended decision awarded them, Defendant's payment of those amounts was late under both section 626 and section 626-A, and Plaintiffs would be entitled to the statutory remedies under either section. However, at oral argument, the parties advised that they agree on one legal issue: that the arbitrator's decision is not *res judicata*. Therefore, in this case, Plaintiffs could seek more than the arbitrator awarded, and Defendant could ask the court to decide that Plaintiffs were not entitled to anything beyond what they were paid initially.

At oral argument, Plaintiffs indicated that they were seeking in this case the 1/18 portion of additional pay that the arbitrator declined to award (the difference between the 6/12 of annual pay Plaintiffs asked for and the 4/9 of annual pay that the arbitrator awarded), along with the statutory remedies allowed under sections 626 and 626-A--double damages and attorney fees, as well as interest and costs. *See id.* However, in a November 9, 2017 letter to the court, delivered after oral argument, attorney Fontaine on behalf of Plaintiffs advised, "The plaintiffs no longer contend that the award was incorrect in the amount of pay it awarded."

It is not clear whether Defendant also will accept the arbitrator's determination regarding the additional amount due to Plaintiffs for the fall 2014 semester. Accordingly, the ruling at this stage is that the Plaintiffs are entitled to seek the

16

statutory remedies if they prove, or it is agreed, that they were due more than the 4/12 of their salaries that they received initially. If the Defendant does intend to relitigate the amount due to Plaintiffs as compensation for the fall 2014 semester, the court will issue a new scheduling order. Otherwise, the only remaining issues are the amount of double damages and attorney fees to be awarded to Plaintiffs.

<u>Conclusion</u>

It is hereby ORDERED AS FOLLOWS:

1. Plaintiffs' Motion for Partial Summary Judgment on Liability is granted in part. If Plaintiffs prove, or if it is stipulated, that they were due more in wages than they were initially paid by Defendant, Plaintiffs are entitled to the statutory remedies available under 26 M.R.S. §§ 626 and 626-A.

2. Defendant's cross-motion for summary judgment is denied.

3. The Clerk will schedule a conference of counsel for the purpose of identifying remaining issues and setting a schedule for further proceedings.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated November 17, 2017

_____
A. M. Horton, Justice

17

Suad Alagic, et al. vs. University of Maine System

Attorney for Plaintiffs:

Donald Fontaine, Esq.
Law Offices of Donald Fontaine
PO Box 7590
Portland, ME  04112

Attorney for Defendant:

Glenn Israel, Esq.
Bernstein Shur Sawyer & Nelson
Po Box 9729
Portland, ME  04104